Mr. Lazar Good morning. May it please the court. In the government's opening statement at trial, the government said that the two owners of Grant Home would testify that they paid health care professionals, including the defendant, cash kickbacks in exchange for patient referrals. They will testify that in 2004 they met with the defendant and they asked him to start sending patients to Grant, and they offered to pay him for those patient referrals. Then in our opening statement, the government learned for the first time that Dr. Patel had never sent any patients to Grant Home, and the government switched their theory of signing a Medicaid reimbursement form was a referral. That theory is unique, it's wrong, and it's dangerous. Judge Goldberg Counsel, let me tell you what bothers me about this case. It seems a logical inference that we know that his office was handing out brochures for Grant. Wouldn't one infer that putting somebody on the recommended list by handing out the brochure is a form of referral? Mr. Lazar No, Judge, and the evidence was clear at trial that Dr. Patel did absolutely nothing to suggest  Judge Goldberg Look, listen to my question. Your patient says, where do I go? Patel says nothing, and then has his secretary or assistant hand out a limited number of brochures. Mr. Lazar Sixteen to twenty. Judge Goldberg And we know that then, after that, about ten percent of his patients are going to Grant. Mr. Lazar I think it's less than three percent over a six-year period of all his patients who had home health care went to Grant. Judge Goldberg Forget about percentages. What I'm trying to figure out is whether it is a form of referral to hand out a limited number of brochures, that is, to make a limited number of recommendations. Instead of recommending that you go only to place A, you recommend and say any of three will fit your needs. Mr. Lazar Well, Judge, I would say any of three is much different than sixteen to twenty. Judge Goldberg Look, can we focus on what I'm trying to get at? Is it within the scope of the statute to call a referral something in which, instead of recommending one, you recommend more than one? Then we might discuss whether three is different from ten or ten is different from one in particular, rather than saying choose from this assortment. Mr. Lazar I don't think it would have to be just one. The point of the statute is to take away from a doctor's referral the incentive to make money. Judge Goldberg Yes, and of course you can see what my follow-up is going to be. Suppose everybody whose brochures are distributed has paid for that service. Mr. Lazar Then he would Judge Goldberg If you get your brochure distributed by payment, you would concede that that's a form of referral. And if sixteen people pay Patel to distribute their brochures, why does it matter at that point which, that any given home gets only eight percent of the patients? Mr. Lazar Well Judge Goldberg The physician has referred by cash to everybody who's getting the referral. Mr. Lazar Well, I think he would be guilty if everyone paid him. But the point of the statute is not to affect the doctor's decision when he recommends. And when he gives sixteen to twenty brochures and in no way suggests that they should pick the only one that's paying him, and only one was, he is not in any way, in no way is his judgment being affected by the fact that he was offered that money. And significantly, Your Honors, he could have made a lot of money if he had recommended him. One of the other defendants in this case received $300,000 because that doctor did tell her patients to go to Grant Home and that doctor made a lot of money. Dr. Patel never suggested or hinted that any of his patients should go to Grant Home. And most of the patients who found their way to Grant Home probably didn't get there from their brochures. They were released from hospitals and nursing homes. And the hospitals and nursing homes referred his patients to Grant Home. So they got there, they didn't even see the brochures. And that's how most people end up, and there's testimony about that at trial, how most people get care at home. So the definition of the statute should be the one that is the common sense definition, which I hope the court will agree on, which is, as we all know, it's to direct or suggest where a patient should go. The government says... Mr. Lazar, what about suggesting you stay where you initially chose to go? I think that... And there's a payment for it. I think that would be a referral and a violation of the statute. Every time the 485 form is signed, isn't that in effect referring in the sense of staying in that... No, I don't think so, Judge, because it's the patient who has decided to go to Grant Home. It's the patient who has decided to continue that care. There's no communication to the patient. It is necessary for Grant Home to be paid that the form would be signed, but I don't agree that that in any way is a referral. What if a doctor doesn't believe you need the 485, has the discretion, obviously not to sign it, thinks you don't need that care, but is paid... And he signs it anyway? That would be health care fraud. It sounds like, in your view,  Is that correct? Suppose somebody arrives at a doctor's office and he's unable to talk, he's in serious trouble, he needs emergency treatment, and the physician calls for an ambulance to come and take him, and the ambulance he calls is one who's agreed to pay the physician every time that's done. Is that a form of referral? Yes, because in that case the doctor has made the decision about where the patient's going to go, not the patient, and that's not the case. But why isn't that the same as signing the Form 485? Because the patient... Without the doctor's signature, the patient isn't going to be at Grant. Because the patient has decided where to go. Not if Dr. Patel doesn't sign the Form 485, he's not going to be at Grant. Well, Grant couldn't get paid, and maybe they would stop treating him. However, there's no question that all the patients needed treatment. And if Grant had their own doctor, their own doctor could sign the Form 485. There wasn't an issue about that the patient didn't need treatment. And that's why it's so clear, as the government said in their opening statement, the people from Grand Home paid Dr. Patel to send patients, not to sign forms. And in fact, because so few of his patients ended up going to Grand Home, they increased the amount they were offering him because the patients weren't showing up there, further proving exactly what the people from Grand Home testified to. They wanted the business. They didn't need the form signed because all the patients needed home health care. They wanted the doctor to suggest to the patients that they should go to Grand Home. What was Dr. Patel paid for? Well, they told him if you... That would be the common sense assessment of why he received anything from Grant. You mean what was in there? Why did they pay him the money? Either, we don't know for sure, I would say either because they may have incorrectly thought that he was telling the patients to go there, the few that end up there, or perhaps maybe they hoped that in the future he would send patients there. When were these payments made? They were made after the patients had gone to Grand Home, after they started receiving care at the time that the forms were signed later on, after the nurse has seen the patient and has written out the course of treatment, which is part of the 485 form, and then it's sent to Dr. Patel to sign. And at that time, and that's the metric of how they paid him was per the form. So he signed and then got paid after he signed? Well, or at the same time. Yeah. All right, I say my time is up and I've reserved a couple of minutes for... Thank you, Mr. Lutzer. Mr. Thompson? May it please the Court, Joe Thompson on behalf of the United States. The District Court did not err in finding that the defendant was guilty of violating the Medicare anti-kickback statute when he accepted cash kickbacks each time he signed one of the required Medicare certification forms. The District Court's interpretation of the statute recognized the dual purpose of the anti-kickback statute, which was designed to prevent improper financial arrangements from influencing a doctor's medical judgment with respect to both the selection of the health care provider and also the necessity of the services. In this case, the defendant accepted a $400 cash kickback for every Medicare certification form that he signed. Now, importantly, these 485 certification forms were required. They were part and parcel, as the District Court found, of the referral process. By signing those Medicare certification forms, the doctor certified that the Medicare services were necessary and authorized the provider to submit Medicare reimbursements. How was the amount that he was paid determined? He was paid on a per-certification basis, $400 for every new certification form that he signed, and every time he signed a recertification for additional Medicare services after the expiration of the initial 90-day period, he got a $300 payment. Was this a negotiated amount? It was what the owner of the home health care agency offered him, and he agreed to accept. So it was negotiated in a sense. It was offered and accepted. In fact, later on, the owner of the home health care company began cooperating with the government and made some recorded kickback payments to the defendant in which they talked about that calculation. He said, I'm giving you $400. That's for one new certification and two recertifications. Mr. Thompson, when did the first referral occur in this case? I believe in 2005 or 2006. What constituted the referral? The way it worked here, Judge, was that the doctors— I got a pretty good fix from the briefs on how it does. So is your position the referral occurs when the first of the 485? The first referral is the first certification under the 485? That's correct, Judge. That's part and parcel of that referral process. It is the referral. This is the common sense term if you need specialist care. You might go to your primary care physician and say, I'd like to see a cardiologist. I hear that Dr. Jones is the best. I'd like to go there. Can I get a referral? Because health care insurers, both private insurers and Medicare, often require that sort of— Who tells you to go to Dr. Jones under your scenario? Either way, you can request it yourself. And often this is not uncommon for someone to say, I'd like to go to a specialist. I hear this guy is the best. I've heard that myself. Doctor, will you give me a referral? Because the insurance company, whether it's a private insurer, in this case Medicare, requires that certification, that authorization to seek the specialist care. In this case, if the defendant had just simply sent the patients to Grant but then not signed the certification, that would be worthless. Why wasn't that a referral? If you say, I think you ought to go to Grant, wouldn't that be a referral? That could be, too. But to really complete the referral in the sense, as a practical matter, for purposes of both the patient and Grant, he needed to also sign the certification forms because Grant needed the certification forms in order to submit the bills to Medicare for reimbursement, and the patient effectively needed that certification to be signed in order to obtain treatment from Grant. Did Dr. Patel know when he made that first referral that he was going to get paid? That he was going to get paid? He had been offered, yes. They had had a meeting back in, I believe it was late 2005, where the owners of the home health care company came to his office and offered to pay him for patient referrals, and they made him an offer about this, they were going to pay him on a per-certification basis, and that's what he accepted. And that's a key distinction here, that he got paid per certification in every case, and it demonstrates the importance of that certification form to the Medicare process. If that was his intention, why would he have assistance passing out more than Grant forms? Why would you have a, is that cover for the scheme, would you say, Mr. Thompson? It doesn't affect his legal liability, no. Again, because that referral process encompassed the certification forms. The government said in its opening about he's getting paid per certification because sending the patient, if you just send the patient information without signing the certification, that's worthless. That doesn't do the patient any good because no provider is going to treat you if Medicare is not going to be able to reimburse them. And so Grant needed that certification. That was what it was. Well, there was an indication that patients received something like up to 16 brochures. Had any other provider or any other health care, whatever the name of it is, offered money in return? There's no evidence of that in the record, no, Judge, but it doesn't protect you. The anti-kickback statute prohibits the acceptance of even a single kickback. There's no rule that says it's only illegal to accept kickbacks if it's all your patient streams or even the majority of your patient streams. A single kickback is illegal. It's unremarkable, the district court's conclusion, that signing these certification forms, getting paid soliciting a kickback for each certification form is illegal. In the Medicare system, these certification forms are the key document that are part of that referral that allow you to bill. The defendant used that power to extort kickbacks from the home health care agency. In fact, there was a phone call after the owner of the company started cooperating where the defendant reached out to him and called and said, are you ready for the paperwork? As the district court found, what he was saying is, are you ready to come get the 45 sign and pay me? And the cooperator said, money's tight right now, I'm not ready. What the defendant said was, so you're not ready for the paperwork then? And it wasn't until a week or so later when they called him back and said, I'm ready, and he signed the certification forms while being paid. And it's important to go to the point that you raised earlier, Judge Kaney. The defendant signed these certification forms, or during the meetings where he signed the certification forms is where he got paid. It was at the same meeting. When the defendant went to get the forms signed, he paid per certification forms. The inference is clear, the district court made it, that he was being paid for signing the certification forms. There's no other conclusion that I think a reasonable fact finder could make based on the way the payments were made and the time at which they were paid. One other issue I want to address that the defense has risen is the issue of health care fraud and whether or not the medical judgment in terms of the identity of the provider was affected. That's irrelevant under the statute. There's no requirement under the anti-kickback statute that the government show that there was substantive health care fraud or that the costs of the payments were made. The system is in place. It's clear, in part, to protect against kickbacks from influencing medical judgment as to the necessity of the services. That's what the 45 form is for, to authorize the services, to certify that they're necessary. But as this court said in Ruttenberg, whether the costs were directly and immediately increased by those particular payments is irrelevant. The court said that the potential for the increased costs is inherent in a kickback relationship. So the suggestion that whether or not there was, the government showed, health care fraud is irrelevant here. The statute is clear. The purpose of it is clear. For that reason, Judge, if there's no further questions. Yeah, well, Mr. Thompson, let's just focus for a second, if we could, on refer. What does refer mean? That you, Dr. A, say, go to somewhere? That's certainly. That's a possible. That's a possible one, yes, but it's not the only part of it. So we don't have that, right? Correct, under this record. Unless you say, by very fact, issuing 16 brochures, you're recommending possibly 16 places. Certainly, there was some imprimatur of this as being one of the. Well, if they're handed out, I suppose you shouldn't hand out brochures from an office, from your office, if you don't have some confidence that those are potential. That's right. So is it part of the government's position that it was one of the 16? There's an initial referral to grant, at least because it's a possibility? I think that's right. I mean, I think what the evidence shows here is that when the defendant signed those certification forms, he knew that the patients had been sent over from his office, that the information had got there from his office, at least in many of the cases. He knew that the company needed the defendant to sign those certification forms in order to complete that referral, and he knew that the patient, in effect, needed him to sign that certification form in order to obtain the home health care services. For that reason, it's a referral. He knew he was making a referral in that situation. He knew that was what the payments were for, and that's what was happening there. Like I said, as the district court found it, it's part and parcel of the referral process, because there's no referral without the certification. It's an incomplete referral because what you need in the Medicare context and the insurance context is the authorization of your doctor to get it. That's what a referral is in Medicare. I see that my time is up. If there are no further questions, I'd ask that you affirm the defendant's conviction. Thank you. I'm sorry. You may have two minutes. Mr. Thompson says it's clear that they were paying him to sign the 485 form. So clear, it's never mentioned in the indictment and was never mentioned in his opening statement. This is a theory they came up with to try and save this prosecution when they found out that they had blundered and they had indicted someone who had never sent anybody to Grand Home. The 485 form has nothing to do with the referral. The referral, the decision is made by the patient. It's already been done. The patient is receiving treatment before that time. The referral is over with. It's not part and parcel of the referral to sign a form so that they can get paid. Furthermore, if the statute does not mean that refer means to send or recommend, then the statute is boundless. The statute only seeks to take away money from one decision made by doctors, and that's to send people to somewhere for health care. It doesn't seek to take it away from making lectures, from doing research, or from signing forms. If Congress wants to do that, they can hold hearings, and maybe they want to do that, but Congress has only made it a crime to have money affect the decision to send people for health care. Can you give an explanation of the phone call that was recorded where he, you know, which one I'm referring to, the counsel report, where he said, then money's tight, can't pay you now, or something like that? Yeah, I think what that actually meant is just that he wasn't going to be coming by and wasn't going to be signing the form because he said money's tight, so they weren't going to be bringing the forms over at that time, so they weren't going to be meeting. I don't think he was trying to shake him down. But the paying per form was just the metric for sending them there. As the government said in their opening statement and then their witnesses testified to, the payments were made in each case. They said we need the business. We want you to send patients to us. There was nothing said about we're paying you to sign forms. The patients all needed health care. There's no evidence in the record that that's why they pay them. This is a theory the government came up with after opening statements to try and save this prosecution. It's a dangerous theory that extends the statute. Mr. Lazar, if there's no initial referral, which is your position, or there's never a referral, actually, is your position, in a scheme such as is alleged here, there can't be later referral? In other words, the 485 signings as they continue, they can never be interpreted as a referral? It would be a referral if he did something to influence that the patients stay there. If he said to the patients, you should stay at Grant Home, or he said to the patients, you shouldn't stay here. Home care, yeah. Right. Well, by signing it, isn't that what he's saying? It lets them stay there, but it does not affect their decision. They're the ones that have decided to stay there. You answered my question about what a referral is by saying that it's not necessary that the patient make any decision at all. If a patient with a heart attack arrives and is sent to somebody who paid, that would be a referral, you said. It's the doctor. It would be a referral because the doctor arranged for this person to be at a particular provider. Once you say that no decision by the patient is required for a referral, it seems to me your position becomes much harder. I think the key is, is the doctor telling the patient where to go or directing it? Then you have to give a different answer to my question. You have to say that in my situation that is not a referral because the doctor didn't say anything to the patient. The doctor just sent the patient someplace. The patient made no choice. I can't say that that's not a referral because the doctor, if the doctor has the entire decision or if he tells the patient, I think that would both be a referral, but that is not what happened here. Thank you. Thank you, Mr. Thompson. Thanks to all counsel. The case is taken under advice in court. We'll proceed to the fourth case.